UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
DARIUSZ MICHALOW, et al.,

                        Plaintiffs,

    -against-

EAST COAST RESTORATION &
CONSULTING CORP., et al.,

                    Defendants.
-----------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 1 1 2017 ★

BROOKLYN OFFICE

REPORT AND
RECOMMENDATION

09 CV 5475 (SLT) (RML)

LEVY, United States Magistrate Judge:

        Plaintiffs Dariusz Michalow, Sebastian Tkaczyk, Tomasz Helwing, and

William Gonzalez ("plaintiffs")[1] commenced this class and collective action on December 15,

2009, asserting wage and hour claims against ten defendants: Andrzej Kaczmarek, Bozena

Barbara Marcisquak ("B. Marcisquak"), Karol Marcisquak ("K. Marcisquak"), Marcin

Podgorny, Grzegorz Sobolewski, East Coast Installation & Consulting, Corp. ("ECIC"), East

Coast Restoration & Construction Consulting, Corp. ("ECRCC"), East Coast Restoration &

Consulting Corp. ("ECRC"), Midtown Restoration, Inc. ("Midtown"), and Roofing Systems

Consulting Corp. ("RSC") (collectively, "defendants"). (See Complaint, dated Dec. 10, 2009

("Compl."); Amended Complaint, dated Nov. 12, 2012 ("Am Compl.") (adding Gonzalez as a

named plaintiff and adding seven defendants).) Now before the court upon referral by the

Honorable Sandra L. Townes, Senior United States District Judge, is plaintiffs' motion for

---

[1] In addition to the named plaintiffs, I use the term "plaintiffs" to refer to members of the
216(b) collective.

partial summary judgment as to liability only.  (See Notice of Motion for Partial Summary

Judgment as to Liability, dated Aug. 14, 2014.)

This case was reassigned to me on November 23, 2016.  I held oral argument

on plaintiffs' motion on March 1, 2017.  (See Transcript of Proceedings Held on Mar. 1, 2017,

filed Mar. 13, 2017 ("Tr.").)  For the reasons explained below, I respectfully recommend that

plaintiffs' motion be granted in part and denied in part.  Specifically, I recommend that the

motion be granted with respect to defendants Kaczmarek, K. Marcisquak, ECRC, and

Midtown, who I find acted as plaintiffs' joint employers, but that it be denied with respect to

defendants B. Marcisquak, Podgorny, Sobolewski, ECIC, ECRCC, and RSC.

## BACKGROUND AND FACTS

A. Facts

In the amended complaint, plaintiffs bring claims for unpaid overtime

compensation and spread-of-hours premiums pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law ("NYLL"), N.Y. LAB.

LAW §§ 190, et seq., §§ 650, et seq. (See Am. Compl. ¶¶ 56-96.)  At oral argument, all

defendants except pro se defendant B. Marcisquak[2] stipulated that overtime and spread-of-

hours violations occurred during the relevant time period.  (See Tr. at 5.)  Thus, the parties

---

[2]  On August 12, 2013, defendants' counsel, Michael M. Rabinowitz, Esq., requested leave to
withdraw as counsel for B. Marcisquak due to his difficulty in communicating with her.  (See
Notice of Motion to Withdraw, dated Aug. 12, 2013 ("Mot. to Withdraw").)  Mr. Rabinowitz
stated that he had not heard from B. Marcisquak since July 12, 2013, and therefore that he
could not assist in scheduling her appearance for a court-ordered deposition.  (See Affirmation
of Michael M. Rabinowitz, Esq., dated Aug. 12, 2013, annexed to Mot. to Withdraw.)
Counsel's motion was granted on December 5, 2013.  (Order, dated Dec. 5, 2013.)  Since that
time, the court has received no communication from B. Marcisquak.  During oral argument,
Mr. Rabinowitz stated that he believes she is now deceased.  (See Tr. at 3.)  However, no
suggestion of death has been filed with the court.  See FED. R. CIV. P. 25(a).

agree that the pertinent issue is which of the defendants are liable as "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d). (See id. at 6.) The parties have also stipulated that defendants ECRC and Midtown were plaintiffs' joint employers during the relevant time period. (See id. at 9.)

The following facts are undisputed, unless otherwise noted.[3] Michalow was employed allegedly by all defendants from approximately April 2007 to June 2008. (See Declaration of Dariusz Michalow, dated June 16, 2014 ("Michalow Decl."), Dkt. No. 100-2, ¶ 2.) Michalow performed construction work such as bricklaying, welding, installing and dismantling scaffolding, waterproofing, replacing drains, and caulking. (Id. ¶ 4.) He typically worked fifty to sixty hours per week, and received a thirty-minute lunch break each day. (Id. ¶ 9.) Throughout his employment, Michalow was paid a flat rate of approximately $18 to $20 per hour regardless of how many hours he worked. (Id. ¶¶ 5, 10-11.)

Helwing was employed allegedly by all defendants from approximately spring 2004 to summer 2007. (See Deposition of Tomasz Helwing, dated May 21, 2013 ("Helwing Dep."), Dkt. No. 100-3, at 15-16.) Helwing performed construction work such as caulking, bricklaying, installing electrical wiring and plumbing, roofing, and masonry. (Id. at 16-17.) He testified at his deposition that "[t]here were no typical hours because it was always changing . . . [i]t depended on the project and on the boss's mind." (Id. at 22.) Helwing

---

[3] Defendants have violated Local Rule 56.1 by failing to submit a responsive statement of material facts. See Local Rule 56.1(b). This failure unnecessarily burdens the court. Local Rule 56.1(c) provides that the content of the movant's 56.1 statement will be deemed admitted "unless specifically controverted by a correspondingly numbered paragraph" in the opposing party's 56.1 statement. Nonetheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Here, in the interest of fairness to Mr. Rabinowitz's clients, the court will exercise its discretion to independently "conduct an assiduous review of the record." Id. (internal quotation marks and citations omitted).

further stated that on some occasions he began work as early as 2:00 or 3:00 a.m., if the jobsite was on Long Island, and would not return to unload equipment and materials until after dark. (See id. at 22-24.)

Tkaczyk was employed allegedly by all defendants from 2005 to 2008. (See Deposition of Sebastian Tkaczyk, dated May 28, 2013 ("Tkaczyk Dep."), Dkt. No. 100-4, at 8, 16.) Tkaczyk performed construction work such as roofing, masonry, welding, pressurized washing, painting, and caulking. (Id. at 21.) He testified that he typically worked about seventy-two hours per week, and was paid $13 to $17 per hour regardless of the number of hours he worked. (Id. at 18-20, 22.) Plaintiffs have submitted no evidence concerning Gonzalez's responsibilities, schedule, or wages.

B. Procedural History

This action was previously assigned to the Honorable Marilyn D. Go, United States Magistrate Judge. Michalow, Tkaczyk, and Helwing, individually and on behalf of all others similarly situated, brought the action on December 15, 2009 against defendants B. Marcisquak, ECRC, and Midtown. (See Compl.) On June 28, 2010, Judge Go so ordered the parties' stipulation certifying the action as a collective action pursuant to 29 U.S.C. § 216(b). (See Order, dated June 28, 2010.) Plaintiffs' counsel represents that consent to join forms for twenty-three opt-in plaintiffs have been filed. (See Motion to Amend Pre-motion Conference Letter, dated Apr. 17, 2012, at 1.)

The parties further stipulated to class certification pursuant to FED. R. CIV. P. 23 as to plaintiffs' NYLL claims only and, on April 18, 2011, the parties jointly moved for approval of their proposed class certification order. (See Motion to Certify Class, dated Apr. 18, 2011.) After receiving supplemental submissions, on November 17, 2011, Judge Go

issued a report and recommendation finding that the joint class certification motion should be granted.  (See Report and Recommendation, dated Nov. 17, 2011; see also Order Referring Motion, dated Nov. 2, 2011; Amended Stipulation for Class Certification, dated Nov. 8, 2011; Declaration of Lloyd Ambinder, Esq., dated Nov. 9, 2011.)  On January 4, 2012, Judge Townes adopted the report and recommendation and certified a NYLL class.  (See Memorandum and Order, dated Dec. 29, 2011.)

On November 12, 2012, plaintiffs were permitted to amend their complaint to add seven defendants: Kaczmarek, K. Marcisquak, Podgorny, Sobolewski, ECIC, ECRCC, and RSC.[4]  (See Report and Recommendation, dated Oct. 22, 2012; Order, dated Jan. 28, 2013.)  The claims in the amended complaint were deemed to relate back to the date of the commencement of the action.  (See Report and Recommendation, dated Oct. 22, 2012, at 16.)  On June 24, 2014, plaintiffs' counsel, Virginia & Ambinder, LLP ("V&A"), moved to withdraw as counsel to Helwing and Tkaczyk, stating that a "fundamental disagreement" had given rise to a conflict of interest between V&A's duty to represent the class and its individual representation of named plaintiffs Helwing and Tkaczyk.  (See Letter of LaDonna Lusher, Esq., dated June 24, 2014; Notice of Motion to Withdraw, dated June 24, 2014; Sealed Declaration of LaDonna Lusher, Esq., dated June 23, 2014, Dkt. No. 85-1.)  After conducting a hearing on July 17, 2014, Judge Go granted V&A's motion.[5]  (See Minute Entry, dated July 17, 2014; Order, dated July 22, 2014.)

---

[4]  The amended complaint also added Gonzalez as a named plaintiff.  (See Am. Compl.)

[5]  V&A has explained that, pursuant to Judge Go's ruling, Helwing and Tkaczyk remain as members of the NYLL class and the 216(b) collective, but serve as pro se class representatives.  (See Letter of Lloyd Ambinder, Esq., dated Apr. 19, 2017.)

Shortly thereafter, on July 24, 2014, Helwing and Tkaczyk submitted a letter motion apparently signed by fifteen class and 216(b) collective members seeking to remove V&A as class counsel due to alleged "unethical, immoral and criminal behavior."[6] (Letter of Tomasz Helwing and Sebastian Tkaczyk, dated July 24, 2014.)  Judge Go held a hearing on October 3, 2014, at which she denied the motion "without prejudice to a future application which must [be] brought by [ ] counsel seeking to be substituted as class counsel." (Minute Entry, dated Oct. 3, 2014.)  To date, the court has received no application in compliance with that order.[7]  The instant summary judgment motion was fully briefed as of November 5, 2014, and has been referred by Judge Townes for a report and recommendation.  (See Order, dated Nov. 6, 2014.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Teri v. Spinelli, 980 F. Supp. 2d 366, 372 (E.D.N.Y. 2013).  "The burden is on the moving party to

---

[6]  In their letter motion, Helwing and Tkaczyk also requested removal of Leeds Brown Law, P.C. ("Leeds Brown"), whose attorneys filed notices of appearance on behalf of plaintiffs based on the firm's co-counsel relationship with V&A. (See Letter of Tomasz Helwing and Sebastian Tkaczyk, dated July 24, 2014; Letter of Michael A. Tompkins, Esq., dated Sept. 22, 2014 ("Tompkins Ltr.").)  Leeds Brown subsequently submitted a letter motion to withdraw from the action.  (See Tompkins Ltr.)  That motion was granted.  (See Order, dated May 3, 2017.)

[7]  In March 2017, Helwing and Tkaczyk submitted a second letter motion to remove V&A as class counsel. (See Letter of Tomasz Helwing & Sebastian Tkaczyk, dated Mar. 1, 2017.)  Because the request was substantially similar to the motion before Judge Go, I denied it without prejudice subject to the conditions imposed by Judge Go.  (See Order, dated Apr. 10, 2017.)

establish the absence of any material factual issues." Terry v. Ashcroft, 336 F.3d 128, 137 (2d

Cir. 2003). A dispute is "genuine" when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). The substantive law identifies which facts are material and "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." Id. The inferences to be drawn from the underlying facts

are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party has carried its burden, the party opposing summary

judgment must do more than simply show that "there is some metaphysical doubt as to the

material facts." Id. at 586. Thus, the nonmoving party cannot avoid summary judgment

simply by relying on "conclusory allegations or unsubstantiated speculation." Jeffreys v. City

of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citation omitted).

Instead, the nonmoving party must offer "some hard evidence showing that its version of the

events is not wholly fanciful." Miner v. Clinton Cty., N.Y., 541 F.3d 464, 471 (2d Cir. 2008)

(internal quotation marks and citation omitted).

B. The Substantive Law

The FLSA creates liability for any "employer" who violates its provisions. See

29 U.S.C. § 207(a)(1). The FLSA defines the term "employer" broadly to include "any

person acting directly or indirectly in the interest of an employer in relation to an employee."

Id. § 203(d). "The Supreme Court has emphasized the 'expansiveness' of [the] FLSA's

definition of employer." Chen v. TYT E. Corp., No. 10 CV 5288, 2012 WL 5871617, at *3

(S.D.N.Y. Mar. 21, 2012) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)); see also

Irizarry v. Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013) ("[T]he Court has consistently

construed the Act liberally to apply to the furthest reaches consistent with congressional

direction.") (internal quotation marks and citation omitted).  "The broad definition helps to

expand [the] FLSA beyond common law master-servant relationships and give effect to the

remedial purposes of the Act." Chen, 2012 WL 5871617, at *3 (citing Barfield v. N.Y.C.

Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008)); see also Herman v. RSR Sec.

Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("Above and beyond the plain language,

moreover, the remedial nature of the statute further warrants an expansive interpretation of its

provisions so that they will have the 'widest possible impact in the national economy.'")

(quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

      Regulations promulgated under the FLSA expressly recognize that an

employee may be jointly employed by two or more employers.  See 29 C.F.R. § 791.2.  In

such cases, joint employers are subject to joint and several liability for FLSA violations.  See,

e.g., Guaman v. Krill Contracting, Inc., No. 14 CV 4242, 2015 WL 3620364, at *3 (E.D.N.Y.

June 9, 2015).  "It is common ground that courts, in determining whether an employment

relationship exists for purposes of the FLSA, must evaluate the 'economic reality' of the

relationship."[8] Carter, 735 F.2d at 12 (2d Cir. 1984).  The court's economic reality

determination involves inquiries into whether the putative employer had formal or functional

control over the employee. See Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 72 (2d Cir.

2003); see also Lopez v. Pio Pio NYC, Inc., No. 13 CV 4490, 2014 WL 1979930, at *2

(S.D.N.Y. May 15, 2014).

---

[8]  Courts interpret the definition of "employer" under the NYLL coextensively with the
definition used by the FLSA.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d
19, 37 (E.D.N.Y. 2015) (collecting cases).

8

Factors relevant to a formal control analysis include whether the putative employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter, 735 F.2d 8, 12 (2d Cir. 1984); see also Fermin, 93 F. Supp. 3d at 35-36 (discussing the formal control factors). "No one of the four factors standing alone is dispositive." Herman, 172 F.3d at 139 (2d Cir. 1999). "Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." Id. Additionally, when considering the liability of an individual within a company that itself is undisputedly plaintiffs' employer, evidence indicating operational control over the company's employment of plaintiffs is relevant to the court's economic reality analysis, and may supplement the formal control factors. As the Second Circuit explained in Irizarry, "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." Irizarry, 722 F.3d at 110; see also Sethi v. Narod, 974 F. Supp. 2d 162, 186 (E.D.N.Y. 2013) ("When assessing whether an individual within a company that undisputedly employs a worker is personally liable for damages as that worker's employer the Second Circuit applies the Carter factors, looks to the totality of the circumstances, and also considers the putative employer's level of operational control.") (internal quotation marks and citation omitted); Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 394 (E.D.N.Y. 2012) ("In cases where a corporation is the worker's direct employer, individual officers or directors may also be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls

9

significant functions of the business, or determines the employees' salaries and makes hiring decisions.") (internal quotation marks and citation omitted).

> Factors that indicate functional control include:
>
> (1) whether the alleged employer's premises and equipment were used for the Plaintiffs' work; (2) whether Plaintiffs shifted from one putative joint employer's premises to that of another; (3) the extent to which the work performed by Plaintiffs was integral to the overall business operation; (4) whether Plaintiffs' work responsibilities remained the same regardless of where they worked; (5) the degree to which the alleged employer or its agents supervised Plaintiffs' work, and (6) whether Plaintiffs worked exclusively or predominantly for one Defendant.

Lopez, 2014 WL 1979930, at *2 (internal quotation marks and citation omitted); see Zheng, 355 F.3d at 72. None of these factors, however, "comprise a rigid rule for the identification of an FLSA employer." Irizarry, 722 F.3d at 105 (internal quotation marks and citation omitted). Instead, they "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Id. (internal quotation marks and citation omitted). Accordingly, the fact-intensive character of economic reality determinations renders such issues "rarely amenable to summary judgment." Reiseck v. Universal Commc'ns of Miami, No. 06 CV 0777, 2012 WL 3642375, at *3 (S.D.N.Y. Aug. 23, 2012) (citing Barfield, 537 F.3d at 143-44).

Plaintiffs alternatively contend that defendants may be deemed a "single integrated enterprise" subject to joint liability for employment actions. (See Plaintiffs' Memorandum of Law in Support, dated Aug. 14, 2014 ("Pls.' Mem."), at 12-20.) "In determining whether an integrated enterprise exists, courts consider '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" Morangelli v. Chemed Corp., 922 F. Supp. 2d 278,

10

285 (E.D.N.Y. 2013) (quoting Reiseck, 2012 WL 3642375, at *4); see also Ayala v. Your

Favorite Auto Repair & Diagnostic Ctr., Inc., No. 14 CV 5269, 2016 WL 5092588, at *16

(E.D.N.Y. Sept. 19, 2016); Chen, 2012 WL 5871617, at *3. "'To demonstrate single

employer status, not every factor need be present, and no particular factor is controlling.'"

Chen, 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012) (quoting Lihli Fashions Corp. v.

N.L.R.B., 80 F.3d 743, 747 (2d Cir. 1996)). "Although the single employer determination

depends on all the circumstances of the case, control of labor relations is the central concern."

Id. (internal quotation marks and citations omitted); see also Morangelli, 922 F. Supp. 2d 278,

285 (E.D.N.Y. 2013) (explaining that the single integrated employer doctrine applies in

"extraordinary circumstances" justifying "the belief on the part of an aggrieved employee that

the affiliated corporation is jointly responsible for the acts of the immediate employer")

(internal quotation marks and citation omitted).

      The Second Circuit does not appear to have applied the single integrated

enterprise theory, which was developed in the context of the National Labor Relations Act, to

the FLSA.  See Ayala, 2016 WL 5092588, at *16; Chen, 2012 WL 5871617, at *3; Teri v.

Spinelli, 980 F. Supp. 2d 366, 372 n.12 (E.D.N.Y. 2013).  Nonetheless, district courts in this

Circuit have applied the theory to impose liability for FLSA violations based upon an

adequate factual showing.  See, e.g., Ayala, 2016 WL 5092588 (imposing single integrated

enterprise liability following a bench trial in light of, inter alia, the "shared policy concerns

underlying the doctrine and the FLSA") (internal quotation marks and citation omitted); Coley

v. Vannguard Urban Improvement Ass'n, Inc., No. 12 CV 5565, 2016 WL 4179942, at *5

(E.D.N.Y. Aug. 5, 2016) (finding that defendants constituted a single integrated enterprise at

the default judgment stage); Chen, 2012 WL 5871617, at *3-5 (applying the doctrine to grant

plaintiffs' summary judgment motion, but explaining that defendants alternatively satisfied the economic reality test); but see Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013) (declining to apply the single integrated enterprise doctrine in the absence of clear precedent, but noting that its application would not change the outcome of plaintiffs' summary judgment motion).

C. Analysis

1. Kaczmarek

Kaczmarek was the sole owner and sole officer of Midtown, an entity that defendants admit jointly employed plaintiffs with ECRC. (See Deposition of Andrzej Kaczmarek, dated July 9, 2013 ("Kaczmarek Dep."), Dkt. No. 98-4, at 21-22.) While the extent of the relationship between ECRC and Midtown is unclear, it is significant that some of the paychecks issued to plaintiffs bear the title "East Coast Restoration D/B/A Midtown Restoration Corp." (See Paychecks, filed Nov. 5, 2014 ("Paychecks"), Dkt. No. 100-8.)

In addition to owning and operating Midtown, Kaczmarek was involved in facilitating ECRC's operations. Sobolewski testified that ECRC's first office was established in Kaczmarek's apartment on Union Avenue in Brooklyn. (See Deposition of Greg Sobolewski, dated Apr. 10, 2012 ("Sobolewski Dep."), Dkt. No. 100-14, at 243.) New York State Department of State records for ECRC also indicate that ECRC used Kaczmarek's address for service of process, as well as for the address of its Chief Executive Officer. (See New York State Department of State Records, filed Nov. 5, 2014, Dkt. No. 100-11, at 1.) Sobolewski further testified that Kaczmarek, through Midtown, was the lessee of record for ECRC's equipment facility. (See Sobolewski Dep. at 244.)

The parties dispute Kaczmarek's corporate title and authority to act on behalf of ECRC. Kaczmarek asserts that he was not an owner or officer of ECRC, but rather was employed solely as an estimator. (See Affidavit of Andrzej Kaczmarek, sworn to Oct. 8, 2014 ("Kaczmarek Aff."), Dkt. No. 98-1, ¶¶ 5-6, 10-12; Kaczmarek Dep. at 32, 34.) However, the record includes a recommendation letter written in support of an applicant's request for a "Certificate of Fitness for Storage and Handling of LPG." (See Kaczmarek Recommendation Letter, dated Oct. 4, 2010, Dkt. No. 100-9, at 3.) The letter is printed on ECRC letterhead and signed by Kaczmarek, who identifies himself as Vice President of ECRC. (Id.) In his affidavit, Kaczmarek explains that the "letters . . . permitted [ECRC] employees to obtain . . . permits to operate roofing torches and forklifts." (Kaczmarek Aff. ¶ 8.) However, Kaczmarek asserts that he was "required" to sign such letters, which "had no impact on personnel decisions." (Id.)

Kaczmarek also signed several New York City Department of Buildings scaffolding permit applications on behalf of ECRC. (See Scaffolding Permit Applications, filed Nov. 5, 2014 ("Scaffolding Permit Applications"), Dkt. No. 100-15.) Kaczmarek is listed as the projects' "special rigger" on these filings, and his business name is listed as Midtown Restoration. (See id.) According to Kaczmarek, "since [he] held the riggers [sic] license for [ECRC] [he] was required to sign" such applications. (Kaczmarek Aff. ¶ 6.) Finally, although Sobolewski testified that Kaczmarek executed contracts on behalf of ECRC (see Sobolewski Dep. at 53), Kaczmarek denies having done so (see Kaczmarek Aff. ¶ 10).

While there are issues of fact with respect to Kaczmarek's corporate title and authority within ECRC, it is relevant that ECRC and Midtown jointly employed plaintiffs. As such, the court's analysis of Kaczmarek's individual liability must account for the fact that

13

Kaczmarek owned and operated Midtown, and that plaintiffs' employment cannot be neatly parceled between ECRC and Midtown.  Thus, to the extent that Kaczmarek exercised control over plaintiffs' employment, such control must be considered in the context of his ownership of Midtown.  See Irizarry, 722 F.3d at 110 ("A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment.").

With respect to the first Carter factor, the power to hire and fire employees, Michalow asserts that Kaczmarek hired him to work for defendants in 2007.  (See Michalow Decl. ¶ 3.)  Sobolewski testified that Kaczmarek hired Helwing, whereas Helwing testified that he was hired by Sobolewski during a telephone interview.  (See Sobolewski Dep. at 34; Helwing Dep. at 14-15.)  Nonetheless, Helwing explained that, during their telephone conversation, Sobolewski directed him to meet in-person with Kaczmarek who would "give [him] directions [regarding] where [he] was to go, [and] what [he was] supposed to do." (Helwing Dep. at 14-15.)  Sobolewski further testified that Kaczmarek possessed the authority to fire plaintiffs.  (See Sobolewski Dep. at 237-38.)  In response, Kaczmarek asserts in his affidavit that plaintiffs have produced no "documentary evidence that [he] was involved in the personnel [ ] functions of [ECRC]."  (Kaczmarek Aff. ¶ 9.)  However, this does not controvert the aforementioned testimony.

With respect to the second Carter factor, control over employees' work schedules or the conditions of their employment, Sobolewski testified that Kaczmarek's responsibilities included being "on a jobsite, and dealing with people there."  (Sobolewski Dep. at 49.)  Specifically, Sobolewski explained that Kaczmarek went into the field to "make sure the jobs run well and according to the details he estimated" and to ensure that "the

14

locations that he had estimated on a building were all well taken care of, and were all worked on." (Id. at 49-50.) Michalow further asserts that Kaczmarek would assign him work and tell him when and where to report for work. (See Michalow Decl. ¶ 8.) Similarly, Helwing testified that Kaczmarek was one of the "bosses" who controlled his schedule and directed him as to where to report for work. (See Helwing Dep. at 22-26.) Defendants have provided only minimal, non-contiguous excerpts of Kaczmarek's deposition testimony. At his deposition, Kaczmarek testified that although he "went into the field many times [to] check for rigging and estimating progress" he never supervised the work being conducted. (Kaczmarek Dep. at 37.)

With respect to the third Carter factor, uncontroverted evidence in the record indicates that Kaczmarek exercised control over the rate and method of plaintiffs' compensation. Sobolewski testified that Kaczmarek determined employees' hourly wages, and was responsible for approving weekly timesheets (see Sobolewski Dep. at 206-07, 210-11), and Michalow asserts that some of his paychecks bore Kaczmarek's signature (See Michalow Decl. ¶ 6). Although Kaczmarek's affidavit asserts that plaintiffs have produced no "documentary evidence that [he] was involved in the [ ] compensation functions of [ECRC]," this is insufficient to controvert the testimonial evidence of record. (Kaczmarek Aff. ¶ 8.)

In sum, the uncontroverted evidence before me establishes that Kaczmarek was the sole owner and sole officer of Midtown, which jointly employed plaintiffs with ECRC. The record further reflects that Kaczmarek played a significant role in facilitating ECRC's operations by virtue of leasing an equipment facility and allowing the entity's office to be housed in his apartment. Additionally, the undisputed record establishes that Kaczmarek exercised control over plaintiffs' employment, in that he had the power to hire and fire

15

plaintiffs and determined the rate and method of their compensation. In light these facts, I respectfully recommend that defendants' motion be granted as to Kaczmarek.

    2.  <u>B. Marcisquak</u>

B. Marcisquak was the officer, director, and shareholder of ECRC. (<u>See</u> Defendants' Answers to Interrogatories, dated Apr. 12, 2013 ("Interrogs."), Dkt. No. 100-7, ¶ 2.) Nonetheless, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of employees." <u>Irizarry</u>, 722 F.3d at 111; <u>see also</u> <u>Juarez v. Precision Apparel, Inc.</u>, No. 12 CV 2349, 2013 WL 5210142, at *6 (E.D.N.Y. Sept. 13, 2013) (A "defendant's status as a CEO does not, in itself, qualify a defendant as an employer under the FLSA.").

Plaintiffs fail to cite any evidence concerning B. Marcisquak's degree of involvement in ECRC's employment of plaintiffs. Nor has the court's independent review of the record found any dispositive evidence demonstrating that B. Marcisquak exercised control over plaintiffs' employment. Accordingly, I respectfully recommend that plaintiffs' motion be denied as to B. Marcisquak.

    3.  <u>K. Marcisquak</u>

B. Marcisquak's spouse, K. Marcisquak, is the officer, director, and shareholder of RSC. (<u>See</u> Interrogs. ¶ 2.) Unlike ECRC and Midtown, however, defendants do not concede joint employer liability as to RSC. Further, as discussed below, I find that plaintiffs have not established as a matter of law that they were jointly employed by RSC or that RSC operated as part of a single integrated enterprise. Accordingly, I must assess K. Marcisquak's liability in the context of his role within ECRC and his degree of control over plaintiffs' employment with ECRC.

16

The record before me includes no affidavit or deposition transcript from K. Marcisquak.  Other relevant evidence exists, however.  Sobolewski testified that K. Marcisquak "start[ed] up" ECRC with his wife, B. Marcisquak.  (Sobolewski Dep. at 61-62.)  Nonetheless, although K. Marcisquak worked alongside Sobolewski at ECRC's small office (see id. at 58-59), Sobolewski did not know what his corporate title was or what his responsibilities included (see id. at 62-63, 65-66).  Additionally, Podgorny, who as discussed below owned and operated ECIC, testified that his company was a subcontractor for ECRC and that, in this context, he dealt with K. Marcisquak who acted on behalf of ECRC.  (See Deposition of Marcin Podgorny, dated June 7, 2013 ("Podgorny Dep."), Dkt. No. 100-10, at 93-94.)

With respect to the exercise of control over ECRC's employment-related affairs, Sobolewski testified that K. Marcisquak recruited him to work as ECRC's chief salesman.  (See Sobolewski Dep. at 61-62.)  Tkaczyk similarly testified that K. Marcisquak hired him, was one of the individuals who directed him as to which projects to report to, and distributed his wages.  (See Tkaczyk Dep. at 9, 14, 23.)  Further, Helwing testified that K. Marcisquak was among the "bosses" who directed him as to which project to report to and set his daily schedule.  (See Helwing Dep. at 21-26.)

Although defendants argue in their opposition brief that "[t]here are issues of fact regarding any purported liability of [K. Marcisquak]," they do not identify any.  (See Defs.' Mem. at 7.)  Thus, while gaps remain concerning the full extent of K. Marcisquak's role within ECRC, plaintiffs have submitted evidence showing that K. Marcisquak had authority over ECRC's affairs, in that he founded the company with his wife and was involved in subcontractor agreements.  With respect to the exercise of control over ECRC's

employment practices, the record reflects that K. Marcisquak exercised authority to hire

plaintiffs, and supervised and controlled their schedules and conditions of employment.

Additionally, it is significant that K. Marcisquak recruited Sobolewski, who, as discussed

below, occupied a high level position at ECRC.  Cf. Herman, 172 F.3d at 140 ("[T]he fact that

[defendant] hired individuals who were in charge of the [employees] is a strong indication of

control.").  In sum, in the absence of any dispute as to the aforementioned evidence, I find that

plaintiffs have sufficiently established K. Marcisquak's joint employer liability, and I

respectfully recommend that plaintiffs' motion be granted as to him.

        4.  Podgorny

        Disputed issues of material fact exist as to whether Podgorny should be liable

as a joint employer under the FLSA.  As noted, Podgorny was the officer, director, and

shareholder of ECIC.  (See Interrogs. ¶ 2.)  As discussed below, however, I do not find as a

matter of law that plaintiffs were jointly employed by ECIC or that ECIC operated as part of a

single integrated enterprise.  Thus, I assess Podgorny's joint liability in the context of his role

within ECRC, and particularly with respect to the exercise of control over plaintiffs'

employment.

        Podgorny asserts that he was employed by ECRC as a truck driver and

messenger, and that this position did not entail management or corporate control

responsibilities.  (See Affidavit of Marcin Podgorny, dated Oct. 10, 2014 ("Podgorny Aff."),

Dkt. No. 98-2, ¶¶ 3-4.)  Sobolewski also testified that Podgorny worked for ECRC as a driver.

(See Sobolewski Dep. at 126.)  With respect to the exercise of control over plaintiffs'

employment, Helwing testified that Podgorny was among the "bosses" who set his schedule

(see Helwing Dep. at 22-26), and Michalow asserts that Podgorny sometimes distributed his

pay (Michalow Decl. ¶ 7). While Tkaczyk also testified that Podgorny sometimes brought him his paycheck, he also referred to Podgorny as "the driver." (Tkaczyk Dep. at 23.)

Plaintiffs have submitted several New York City Department of Buildings scaffolding permit applications that list Podgorny as ECRC's filing representative. (See Scaffolding Permit Applications.) However, according to both Podgorny and Sobolewski, the inclusion of Podgorny's name as ECRC's filing representative simply reflects the fact that Podgorny physically brought the application to the Department of Buildings, and "[a]nybody [could] submit it" as long as they had a valid driver's license. (See Podgorny Dep. at 79-90; Sobolewski Dep. at 165.) In sum, in light of evidence in the record indicating that Podgorny's responsibilities were limited to those of a driver and messenger, I respectfully recommend that plaintiffs' motion be denied as to him.

### 5. Sobolewski

Disputed issues of fact remain as to Sobolewski's liability as a joint employer. Sobolewski founded his company, ECRCC, in 2010, after plaintiffs' respective employment periods had ended. (See Sobolewski Dep. at 18, 26; Affidavit of Grzegorz Sobolewski, sworn to Oct. 8, 2014 ("Sobolewski Aff."), Dkt. No. 98-3, ¶ 16.) Thus, I focus on evidence concerning Sobolewski's role and authority within ECRC, and his exercise of control over plaintiffs' employment for that entity. Sobolewski testified that he was employed as ECRC's "chief salesman" from 2002 to 2009 or 2010, when he left to form ECRCC. (See Sobolewski Dep. at 12, 18-20, 26; see also Sobolewski Aff. ¶¶ 6, 16.) As described in his affidavit, Sobolewski's responsibilities for ECRC included "sell[ing] projects, meet[ing] with representatives of building owners and go[ing] to jobsites to be certain that the work was being properly performed and that the project owner was satisfied." (Sobolewski Aff. ¶ 6.)

19

Podgorny also testified that Sobolewski was "the salesperson that made the deal." (Podgorny Dep. at 94.) Sobolewski further testified that his role at ECRC included estimating bids for "small jobs" ranging in price from $1,000 to $10,000. (See Sobolewski Dep. at 33.)

Numerous permit filings for ECRC and Midtown during the relevant time period list Sobolewski as the projects' "superintendent." (See Superintendent Permit Records, filed Nov. 5, 2014 ("Superintendent Permit R."), Dkt. No. 100-16.) According to Sobolewski, the "superintendent" on a jobsite is "a guy that's taking care of pretty much everybody there, and make[s] sure that everybody is there on their positions, and working." (Sobolewski Dep. at 46-47.) However, Sobolewski denies that he ever worked as ECRC's or Midtown's superintendent. (See id. at 143.) Additionally, Sobolewski is almost invariably listed on these permit filings as the individual permittee. (See Superintendent Permit R.) In his affidavit, however, Sobolewski asserts that "since [he] had knowledge of the projects, [he] would assist in the filing of permits" but states that the permitting process did not affect ECRC's personnel decisions or relate to "corporate control."[9] (Sobolewski Aff. ¶ 8.)

Evidence in the record also indicates that Sobolewski publicly represented himself to be an owner and officer of ECRC. The webpage for an unrelated company partially owned by Sobolewski states that Sobolewski is the "[p]roud owner of [ECRC]." (On One Wheel Homepage, accessed Mar. 30, 2012 ("On One Wheel"), Dkt. No. 100-17, at 2; see Sobolewski Dep. at 93-96.) At his deposition, however, Sobolewski denied the veracity of this statement and explained that it had been added to "[m]ake [the website] look better." (Sobolewski Dep. at 96.) The record also includes two letters of reference for ECRC

---

[9] Sobolewski initially denied filing permits on behalf of ECRC (see Sobolewski Dep. at 105), but acknowledged doing so in his affidavit in opposition to plaintiffs' motion (see Sobolewski Aff. ¶ 8).

employees printed on company letterhead. (See Sobolewski Reference Letters, dated Oct. 8, 2007 & Feb. 22, 2008, Dkt. No. 100-9, at 1-2.) The letters were drafted by Sobolewski, who identifies himself as ECRC's vice president.[10] (See id.; Sobolewski Aff. ¶ 14.) According to Sobolewski, however, "this was really just paperwork" and "even the secretary's signature would show Vice-President for whatever reasons they needed it." (Sobolewski Dep. at 100.) Finally, the paychecks issued to plaintiffs by "East Coast Restoration D/B/A Midtown Restoration" list the entity's address as the address listed as Sobolewski's home address on a W-2 form issued by ECRC. (See Paychecks at 1-5; Sobolewski W-2, filed Oct. 21, 2014, Dkt. No. 98-4, at 1-2.)

With respect to the power to hire and fire employees, Sobolewski testified that he could fire laborers who failed to perform adequately, although "by the time it would get to [him] that bad worker on the job . . . would probably already be fired without [him] knowing." (Sobolewski Dep. at 238-42.) Sobolewski also acknowledged interviewing foremen and supervisors for positions on "[his] jobs." (See Id. at 211.) However, Sobolewski also testified that his preference that ECRC not hire Helwing was overruled by Kaczmarek. (See id. at 135-36.) For his part, Helwing testified that he was hired by Sobolewski. (See Helwing Dep. at 14.)

As to the second Carter factor, Helwing testified that Sobolewski was one of the "bosses" who directed him as to which project to report to and set his schedule. (Id. at 21-26). Sobolewski testified that, if there was a "major problem" at one of his jobsites, then he would go to the jobsite to handle the problem on behalf of ECRC. (Sobolewski Dep. at 90.)

---

[10] Sobolewski initially denied drafting and signing the October 8, 2007 letter (see Sobolewski Dep. at 101-02); however, in his affidavit he acknowledged writing the letter (see Sobolewski Aff. ¶ 14).

As noted, Sobolewski's affidavit further asserts that his responsibilities included "go[ing] to the jobsites to be certain that the work was being properly performed and that the project owner was satisfied with the work." (Sobolewski Aff. ¶ 6.)  Nonetheless, Sobolewski's affidavit also states that he "did not schedule work [ ]or direct employees," and he testified that his visits to jobsites did not entail supervising laborers.  (Id. ¶ 7; Sobolewski Dep. at 50.) Although it appears somewhat implausible that Sobolewski's responsibilities included ensuring that work was being properly performed, but did not include supervising workers, the court may not afford Sobolewski's affidavit less weight at this juncture simply because it appears dubious.  See, e.g., Alvarez v. Michael Anthony George Const. Corp., 15 F. Supp. 3d 285, 293 (E.D.N.Y. 2014) ("[A]t the summary judgment stage, the Court may not weigh the credibility of the evidence, regardless of whether that evidence is inherently implausible or in conflict with other, more trustworthy evidence.") (internal quotation marks and citation omitted); see also Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12 CV 4380, 2014 WL 3734489, at *11 (E.D.N.Y. July 28, 2014) (same).

As to the third Carter factor, plaintiffs assert that Sobolewski signed their paychecks, and sometimes distributed wages.  (See Michalow Decl. ¶¶ 6-7; Tkaczyk Dep. at 23.)  Sobolewski acknowledged that he had the authority to sign checks on behalf of ECRC (see Sobolewski Dep. at 76-77), and testified that "[t]here could be a time that [he] did sign" paychecks.[11]  (See id. at 77, 210.)  Sobolewski also testified that he had the authority to

---

[11]  In his affidavit, Sobolewski asserts that he "did not sign checks on behalf of [ECRC]." (Sobolewski Aff. ¶ 7.)  This arguably conflicts with Sobolewski's prior deposition testimony, is unsupported by any extrinsic evidence, and should be disregarded.  See Gilani v. GNOC Corp., No. 04 CV 2935, 2006 WL 1120602, at *3 (E.D.N.Y. Apr. 26, 2006).  Nonetheless, even if Sobolewski's assertion that he did not sign checks is credited, "[t]he key question is whether [defendant] had the authority to sign paychecks throughout the relevant period." Herman, 172 F.3d at 140.

approve payroll expenditures for "smaller jobs" (see id. at 210), and acknowledged that he

"had something to say" with respect to setting wages for foremen and supervisors (see id. at

211). Additionally, Sobolewski testified that he "could probably ask" with respect to

obtaining raises for "typical workers" but "it was never run by [him]." (Id. at 212.)

According to Sobolewski, Kaczmarek "had the most amount to say about [raises for laborers]

because they were working on the field already." (Id. at 211.)

       "The question of whether a defendant is an employer under the FLSA is a

mixed question of law and fact, with the existence and degree of each relevant factor lending

itself to factual determinations." Berrios, 849 F. Supp. 2d at 393 (collecting cases).

Consequently, "individual employer liability is rarely suitable for summary judgment." Id.;

see also Barfield, 537 F.3d at 143-44 (explaining that "[b]ecause of the fact-intensive

character of a determination of joint employment," the Second Circuit has "rarely [had]

occasion to review determinations made as a matter of law on an award of summary

judgment."). Viewing the record in the light most favorable to Sobolewski, as the court must,

a reasonable jury could find that Sobolewski was not an "employer" under the FLSA. First,

with respect to his role and authority within ECRC, Sobolewski has consistently asserted in

this action that he was not an owner or officer of ECRC, but rather was a salesperson whose

decision-making functions focused on cultivating client relationships and establishing new

business, but did not primarily involve personnel decisions. Viewing the evidence in this

light, the collective import of the Carter factors is ambiguous, and requires weighing

conflicting factors. For example, plaintiffs have established that Sobolewski interviewed

project managers and foremen for his jobs, but the extent to which he actively supervised

those employees, as well as plaintiffs, remains disputed. Further, Sobolewski has asserted that

his authority over hiring and firing decisions was subject to Kaczmarek's approval, at least with respect to Helwing.

Similarly, while Sobolewski possessed the authority to sign paychecks, a significant consideration, it is unclear what the limits of his authority were with respect to compensation decisions.  For example, Sobolewski testified that he could not approve payroll expenditures for projects exceeding a certain threshold, and he indicated that ECRC's compensation decisions were primarily Kaczmarek's responsibility.  In sum, given the deference afforded to defendants' version of the facts at this stage, a reasonable jury could choose to believe that Sobolewski was a high level sales employee of ECRC, but not an owner or officer, and that his control over plaintiffs' employment was circumscribed.  Cf. Sethi, 974 F. Supp. 2d at 188 (denying plaintiff's motion for summary judgment as to whether Vice President of Human Resources was plaintiff's "employer" because, inter alia, the degree of defendant's authority with respect to formal control factors was indeterminate).

### 6.  ECIC

As noted, Podgorny was the officer, director, and shareholder of ECIC. (Interrogs. ¶ 2.)  ECIC performed bridging and scaffolding work from 2008 to 2011 or 2012 when it ceased operating.  (Podgorny Dep. at 45, 71-72.)  Podgorny testified that ECIC did not have its own employees (see Podgorny Dep. at 102, 109), but rather contracted with other companies to provide workers (see id. at 109-10).  According to Podgorny, ECIC did not pay those workers directly.  (See id. at 110.)  Nonetheless, the record includes five checks issued by ECIC to plaintiffs.  (See Paychecks at 6-8, 11-12.)

Podgorny stated that ECIC sometimes acted as a subcontractor for ECRC. (See Podgorny Dep. at 24-25, 93-94, 96.)  In this context, Podgorny stated that he dealt with

Case 1:09-cv-05475-SLT-RML   Document 116   Filed 07/11/17   Page 25 of 30 PageID #: 1604

K. Marcisquak or Sobolewski on behalf of ECRC. (Id. at 93-94.) However, Sobolewski

testified that he never did any business with ECIC.[12] (Sobolewski Dep. at 158, 181-82.)

Sobolewski further testified that to his knowledge ECIC never did any business at all. (Id. at

158.)

Documentary evidence in the record includes numerous checks issued by

ECIC. In May 2009, after the named plaintiffs' employment had ended, ECIC issued two

checks totaling $25,000 to Sobolewski. (See ECIC Checks, filed Nov. 5, 2014 ("ECIC

Checks"), Dkt. No. 100-20, at 8-9.) In September 2009, ECIC issued another two checks

totaling $20,000 to Sobolewski. (See id. at 10-11.) Podgorny acknowledged that he signed

these checks but testified that he believed they were to fix a house, owned by Sobolewski,

where Podgorny's ex-wife and children live. (See Podgorny Dep. at 122-125.)

Plaintiffs have also submitted checks issued by ECIC to ECRC in May 2009,

to RSC in May 2009, and to K. Marcisquak in August 2009. (See ECIC Checks.) ECIC also

issued checks to a parking lot, the New York City Department of Finance, and Dish Network

listing Sobolewski or Kaczmarek's name on the checks' memo lines. (See id. at 1-3.)

Plaintiffs further highlight the fact that ECIC and ECRC had offices in the same building at

232 Madison Avenue in Manhattan and were dissolved on the same date in November 2013 as

evidence that ECIC jointly employed plaintiffs or was part of a single integrated enterprise.

(See Podgorny Dep. at 26-27; New York State Department of State Records, filed Nov. 5,

2014, Dkt. No. 100-11, at 1-4.)

---

[12] As noted, defendants have submitted no affidavit or deposition transcript from K.
Marcisquak, and thus Podgorny's testimony that ECIC subcontracted from K. Marcisquak on
behalf of ECRC is uncontroverted.

Despite these connections between ECIC and other corporate and individual defendants, I find that plaintiffs fail to establish as a matter of law that ECIC acted as plaintiffs' joint employer.  In the absence of evidence concerning hiring and firing power, or control over scheduling and conditions of employment, the record does not conclusively reflect formal control.  Further, even assuming arguendo that plaintiffs could establish that they were employed by ECIC based on either formal or functional control, the undisputed record does not demonstrate as a matter of law that ECIC jointly employed plaintiffs together with ECRC and Midtown.  For example, there is no evidence indicating that "there [was] an agreement between the employers to share [plaintiffs'] services" or that ECIC was "acting directly or indirectly in the interest of the other employer[s] [ ] in relation to [plaintiffs]."  29 C.F.R. § 791.2(b).  A common dissolution date and offices in close proximity do not demonstrate as a matter of law that the entities treated one another's employees interchangeably.  Further, there is no evidence concerning the details and frequency of the purported subcontracts between ECRC and ECIC.

With respect to plaintiffs' single integrated enterprise theory, I similarly find that the record is insufficiently developed, and requires too many inferential leaps, to merit summary judgment.  In essence, I find that offices in the same building, a common dissolution date, and issuance of lump sum checks to other defendants, while relevant, are not sufficiently probative of centralized labor relations, common ownership or control, or common management to merit summary judgment with respect to a single integrated enterprise theory of liability.  Cf. Ayala, 2016 WL 5092588, at *16-17 (finding that defendants constituted a single integrated enterprise following bench trial where, inter alia, the corporations shared the exact same address and were solely owned and managed by the same individual defendant

who used them interchangeably); <u>Chen</u>, 2012 WL 5871617, at *4 (finding parent company

liable under single integrated enterprise doctrine where, <u>inter alia</u>, parent company's director

negotiated on behalf of subsidiary with labor union, parent company's board member was

hired to manage subsidiary and supervise employees, and parent company granted subsidiary

rent free lease).  Accordingly, viewing the evidence in the light most favorable to ECIC, as

this court must, I find that there are material issues of fact in dispute concerning ECIC's

liability as an employer, and respectfully recommend that plaintiffs' motion be denied with

respect to it.

### 7.  ECRCC

Sobolewski founded ECRCC in 2010 after leaving his position at ECRC.  (<u>See</u>

Sobolewski Dep. at 18, 26; Sobolewski Aff. ¶ 16.)  Based on Sobolewski's testimony, it

appears that at least two former ECRC employees subsequently went to work for ECRCC.

(<u>See</u> Sobolewski Dep. at 131-32, 203; <u>see also</u> Sobolewski Aff. ¶ 17 (stating that ECRCC "did

not employ any former field employees of [ECRC]").)  Sobolewski also testified that he

brought "one or two" ECRC clients with him to ECRCC.  (Sobolewski Dep. at 18.)  Although

Sobolewski testified that ECRCC operates out of a different office suite at 232 Madison

Avenue than the office formerly occupied by ECRC (<u>id.</u> at 68), documents submitted by

plaintiffs indicate that ECRCC occupies the same office as ECRC, suite 510 (<u>see</u> ECRCC

Department of Transportation Record, dated May 29, 2014, Dkt. No. 100-12; Scaffolding

Permit Applications at 1).

Significantly, the named plaintiffs' respective terms of employment ended in

2007 or 2008.  It is unclear how plaintiffs can satisfy formal or functional control factors with

respect to an entity that was not in existence during the relevant period.  The record also does

not reflect as a matter of law that ECRC and ECRCC acted as a single integrated employer. While Sobolewski's role in both entities weighs in plaintiffs' favor, the other single integrated employer factors do not. With respect to the interrelatedness of the entities' operations, there is a dispute as to whether ECRC and ECRCC occupied the same office, and while there was some customer overlap, it appears to have been limited to one or two clients. With respect to control of labor relations, the central concern of the single employer analysis, plaintiffs have not shown that more than two employees worked for both entities, and neither is a member of the 216(b) collective or appears to be similarly situated to plaintiffs.[13] Finally, while Sobolewski is the undisputed owner of ECRCC, his ownership stake in ECRC is disputed.[14] Thus, I respectfully recommend that plaintiffs' motion be denied with respect to ECRCC.

8. RSC

As noted, K. Marcisquak is the officer, director, and shareholder of RSC. (Interrogs. ¶ 2.) New York State Department of State records indicate that RSC and ECRC each maintained a principal executive office at 105 Lehman Lane in Branchburg, New Jersey. (See NYS Department of State Entity Information, dated July 18, 2012, Dkt. No. 100-7, at 10-15.) The most compelling evidence submitted by plaintiffs, aside from the familial relationship between the owners of ECRC and RSC, consists of two checks issued by RSC to plaintiffs on May 27, 2009. (See Paychecks at 9-10.)

---

[13] Sobolewski testified that Podgorny and a former ECRC supervisor now work for ECRCC. (See Sobolewski Dep. at 131-32, 203.) There is a factual dispute as to whether Kaczmarek went to work for ECRCC. (Compare Podgorny Dep. at 91-92 with Sobolewski Dep. at 144-45.)

[14] Additionally, to the extent that plaintiffs rely on events that occurred during a confidential mediation session to support their argument that Sobolewski used ECRC and ECRCC interchangeably, the court cannot consider such evidence. See E.D.N.Y. R. 83.8(d).

In assessing formal control, the court considers, inter alia, whether the putative employer determined the rate and method of plaintiffs' compensation. Indicia of authority to determine the method of compensation include "the authority to sign paychecks throughout the relevant period." Herman, 172 F.3d at 140. However, absent additional evidence concerning RSC's operations and relationship to plaintiffs, one check issued to each of two plaintiffs does not establish formal or functional control, or merit liability as a joint employer.

Finally, with respect to plaintiffs' single integrated employer theory, the familial relationship between the Marcisquaks weighs in plaintiffs' favor. Further, as discussed, K. Marcisquak was significantly involved in ECRC's formation and possessed authority to act on the entity's behalf with respect to subcontractors. These facts suggest common ownership and management. However, there is no evidence that ECRC exercised control over RSC's labor relations, and therefore I do not find as a matter of law that RSC and ECRC constituted a single integrated employer. See Morangelli, 922 F. Supp. 2d at 286 ("[T]he mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer."). Accordingly, construing the evidence in the light most favorable to defendants, I respectfully recommend that plaintiffs' motion be denied with respect to RSC.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiffs' motion for summary judgment as to liability be granted in part and denied in part. Specifically, I recommend that the motion be granted with respect to defendants Kaczmarek, K. Marcisquak, ECRC, and Midtown, who I find acted as plaintiffs' joint employers, but that it be denied with respect to defendants B. Marcisquak, Podgorny, Sobolewski, ECIC, ECRCC, and RSC.

Plaintiffs are directed to serve copies of this Report and Recommendation on the <u>pro</u> <u>se</u> parties upon receipt. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Townes and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/ *Robert Levy*
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       July 11, 2017